Mario Feliberty, Appellant, v Mason D. Damon et al., Defendants, and Medical Malpractice Insurance Association, Respondent.

Fourth Department, July 10, 1987

### APPEARANCES OF COUNSEL

*Siller & Galian (Edward Galian* of counsel), for appellant.

*Brown & Kelly (Judith Treger Shelton* of counsel), for respondent.

### OPINION OF THE COURT

CALLAHAN, J.

In this appeal we are called upon to address two issues: first, whether an insured has a cause of action for breach of contract and bad faith against his insurer when, contrary to his wishes, the insurer compromises and settles a verdict against its insured within the monetary limits of the insured's policy, rather than pursuing an appeal as requested by the insured, and second, whether an insured has any cause of action against his insurer for the alleged legal malpractice of the attorneys retained by the insurer to represent him in a covered action.

Plaintiff Mario Feliberty, M.D., a licensed physician, brought this action against his medical malpractice insurance carrier, Medical Malpractice Insurance Association (MMIA), alleging negligence, fraud and breach of contract and against defendant attorneys alleging legal malpractice. The action arises out of an underlying medical malpractice lawsuit in which plaintiff physician was named as a party defendant. The underlying medical malpractice action was commenced in 1979 alleging that Dr. Feliberty failed to diagnose lymphoma properly in a patient he had seen on just one occasion. Upon being served with the summons and complaint in the medical malpractice action, Dr. Feliberty turned the papers over to MMIA. Thereafter, MMIA retained a Buffalo law firm, defendants herein, to represent their insured. MMIA also advised Dr. Feliberty that because there was a demand for monetary damages in excess of the coverage afforded under his policy, he could consult with his own attorney to represent his personal interest.

The medical malpractice action was tried before a jury which returned a verdict of $1,239,000, with liability being apportioned 60% to Dr. Feliberty and 40% to the plaintiff

therein. Thus, the total amount of the verdict against Dr. Feliberty was $743,400, which was within his policy limits. After being informed of the verdict, Dr. Feliberty, both orally and in writing, requested that defendant attorneys, who tried the malpractice action on his behalf, file a notice of appeal. However, prior to entry of judgment, defendant MMIA and defendant attorneys settled the medical malpractice action for the sum of $700,000, a sum less than the amount for which a judgment was to be entered. Dr. Feliberty maintains that this settlement was without his knowledge or consent.

Thereafter, Dr. Feliberty brought the instant action seeking to hold MMIA responsible for the alleged legal malpractice of the attorneys hired to represent him in both the preparation and trial of the underlying medical malpractice action. Plaintiff's complaint also alleges that MMIA breached its contract with him, acted in bad faith, was negligent in its own right, and acted in concert with defendant attorneys to achieve settlement of an unwarranted verdict thereby subordinating his rights and interest to the rights and interest of the insurer. Plaintiff seeks compensatory and punitive damages against all defendants. MMIA asserted as an affirmative defense in its answer that under its contract of insurance with plaintiff, it had and exercised the power, authority and right to enter into such settlement as it deemed expedient.

MMIA moved for summary judgment seeking to dismiss plaintiff's complaint based upon documentary evidence (the provisions of the insurance policy) and for failure to state a cause of action. Special Term concluded that there was no basis to impose liability on MMIA and dismissed the complaint as against MMIA. We agree.

Plaintiff contends that defendant insurer's duty to defend is broader than its duty to pay and includes an obligation to prosecute an appeal from an adverse judgment against its insured. He maintains that he was never consulted about the settlement and discontinuation of the action. Thus, plaintiff claims that defendant MMIA breached its contract and acted in bad faith when it compromised and settled the verdict instead of pursuing the appeal as requested. Defendant insurer, on the other hand, asserts that the insurance policy in question expressly permits it to settle the claim without plaintiff's consent.

■ This is not a case involving either a bad-faith failure to settle within policy limits or a breach of the obligation to

defend where New York courts have permitted recovery of damages against the insurer *(see, United States Fid. & Guar. Co. v Copfer,* 48 NY2d 871; *Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, *cert denied* 410 US 931). Plaintiff's insurance policy provides, *inter alia,* that "[t]he company may make such investigation and such settlement of any claim or suit as it deems expedient." Such language in the policy gives a carrier the right under that contract to settle an action on behalf of the insured with or without the insured's consent *(Orion Ins. Co. v General Elec. Co.,* 129 Misc 2d 466, 471, *affd sub nom. United States Aviation Underwriters v General Elec. Co.,* 125 AD2d 567). An insurance carrier is not obligated to consult its insured in regard to settlement, although the carrier is obliged, in most circumstances, to respond accurately to requests from its insured with reference to the progress of any settlement negotiations *(Knobloch v Royal Globe Ins. Co.,* 38 NY2d 471, 479). Nor is the duty of good faith a material factual issue *(Casualty Ins. Co. v Town & Country Pre-School Nursery,* 147 Ill App 3d 567, 498 NE2d 1177) and a cause of action alleging a breach of the insurer's duty of good faith will not lie where the insurer, contrary to the wishes of the insured, has settled such claim within the monetary limits of the insured's policy *(Marginian v Allstate Ins. Co.,* 18 Ohio St 3d 345, 481 NE2d 600).

Defendant asserts that its decision to settle avoided the possibility of an unfavorable ruling on appeal that might result in a new trial with the attendant risk of a judgment in excess of the previous verdict and the policy limits, thereby exposing their insured (plaintiff) to personal liability. Thus, although we can well appreciate Dr. Feliberty's desire to pursue an appeal to vindicate himself and his professional reputation, MMIA, under the terms of the insurance policy, had an absolute right to settle the action as it deemed expedient, with or without his consent. The exercise of that contractual right obviated the necessity of pursuing any appeal.

■ Whether an insured has any cause of action against his insurer for the alleged legal malpractice of the attorneys retained by the insurer to represent him in a covered action presents a more perplexing issue. There is a split of authority on this topic *(see,* Windt, Insurance Claims and Disputes: Representation of Insurance Companies and Insureds § 4.38, at 175-176). Some jurisdictions adopt the principle pronounced in *Smoot v State Farm Mut. Auto. Ins. Co.* (299 F2d 525) which holds that an insurance carrier is vicariously liable for the

negligence of its insured's defense counsel. Other jurisdictions favor the rationale enunciated by the California Court of Appeal in *Merritt v Reserve Ins. Co.* (34 Cal App 3d 858, 110 Cal Rptr 511) wherein it was held that vicarious liability did not fall on the carrier which was required to retain independent trial counsel to conduct litigation on behalf of its insured. Special Term adopted the "compelling logic in the *Merritt* case". We also adopt that rationale and reject the contrary view.

Dr. Feliberty seeks to hold MMIA responsible for the alleged legal malpractice of the attorneys retained to represent him in both the preparation and trial of the underlying medical malpractice action. There can be no dispute that the insurer's duty to defend is broader than simply retaining counsel. Appointment of counsel without any underlying support would be an illusory satisfaction of the carrier's duty *(Travelers Ins. Co. v Lesher,* 187 Cal App 3d 169, 231 Cal Rptr 791, 801). However, there is no justification here to impute defense counsel's alleged negligence to MMIA. A carrier must rely on counsel to conduct the litigation. The defendant law firm retained by MMIA to represent Dr. Feliberty is an independent contractor *(see, Merritt v Reserve Ins. Co., supra).* There is no claim that this firm was controlled by MMIA (house counsel) or that there was any breach of duty to hire competent defense counsel.

There is no allegation in the instant case of any affirmative acts that MMIA failed to perform (lack of investigation, failure to supply necessary witnesses). The analysis should focus on the acts performed by the insured's attorney which are alleged to be negligent. If the acts are performed solely by the attorney (in his capacity as an attorney) and are directly related to the representation of the insured in litigation, the attorney's negligence will not be imputed to the insurance carrier. We find nothing in plaintiff's complaint which alleges a valid cause of action against MMIA.

Our position here is not inconsistent with our decision in *Cornwell v Safeco Ins. Co.* (42 AD2d 127). In *Cornwell* we held in the carrier because "[w]hen Safeco undertook the joint defense of several parties with adverse or conflicting interests, it assumed the risk that it could not afford all a fair and impartial defense, and its failure to fully protect the interests of certain defendants in order to obtain an apparent advan-

tage for other defendants or for itself rendered it liable for the damages naturally resulting from such conduct" *(Cornwell v Safeco Ins. Co., supra,* at 135-136).

Accordingly, the order should be affirmed.

DILLON, P. J., GREEN, BALIO and DAVIS, JJ., concur.

Order unanimously affirmed, without costs.